IN RE ZAMORA S. ET AL.*
(AC 31452)

DiPentima, C. J., and Gruendel and Hennessy, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for

Argued May 24—officially released August 3, 2010

inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Michael Besso*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellant (petitioner).

*Rosemarie T. Weber*, for the appellee (respondent mother).

*Marcus V. Hallum*, for the minor children.

*Opinion*

DiPENTIMA, C. J. The petitioner, the commissioner of children and families, appeals from the judgments of the trial court denying her petition for an adjudication of neglect as to the respondent mother, Sheena S., regarding her minor child, Bryce, and denying the petitions for termination of the respondent's parental rights as to her minor children, Zamora, Justin, Kelsey, Evan and Bryce.[1] The petitioner argues that the court improperly (1) found that Bryce was not neglected by the respondent, although he was neglected by his father, and (2) applied an elevated standard of proof for a subordinate fact underlying a required element necessary for the petitioner to prevail on the petitions for termination of parental rights.[2] We reverse the judgments of the trial court.

The following facts, as found by the court, are relevant to the resolution of this appeal. The department

[1] The father has not appealed from the court's decision, and the petitioner does not, in this appeal, seek reversal of the court's orders terminating his parental rights. Because this appeal concerns only the judgments as to the respondent mother, we refer to her in this opinion as the respondent.

[2] The petitioner additionally claims that the court improperly (1) ordered that custody of Zamora, Justin and Kelsey be vested in the maternal grandmother, Lorrain S., and (2) did not consider evidence regarding the children's health, medical and developmental needs for the purpose of determining an adjudicatory ground alleged in the petitions for termination of parental rights. Because we reverse the judgments of the court based on the first two claims, we need not address these additional claims.

of children and families (department) first became concerned with the respondent's family as the result of a referral from the Waterbury police department on May 15, 2006. While striking the respondent, the father accidentally struck Evan, then one year old, causing a bloody nose and bruising. The respondent signed a safety agreement to live with the maternal grandmother but soon moved back in with the father. Department social worker Heather Howard testified that the department considered the major issues of the respondent to be that she was a victim of extensive domestic violence at the hands of the father, the injury to Evan, substance abuse, unaddressed mental health issues and inadequate parenting skills. A psychological assessment completed on September 19, 2008, by Ralph P. Balducci, a licensed psychologist, found that the respondent appeared depressed and that "[h]er emotional difficulties and personality disturbance clearly hinder her ability to effectively sustain relationships and to consistently and appropriately manage her parental responsibilities."

On August 7, 2006, another domestic violence incident occurred, causing the department to become involved with the family once again. Howard testified that the respondent failed to fulfill her commitment to the department to file a " 'restraining-protective order' " against the father. Howard testified that the department was concerned with the respondent's mental health issues and her continuing failure to protect herself and her children from an abusive partner and the father.

On November 17, 2006, the petitioner sought and obtained an order of temporary custody of all of the children as a result of a domestic incident in which Evan apparently spilled a hot cup of coffee after taking it out of a microwave oven, resulting in serious burns to his chest and a five day stay in Bridgeport Hospital's burn unit. A department social study dated October 10,

2008, stated that in December, 2006, the respondent informed the department that the father had left the home with all of his belongings. The study additionally stated that the department had no known information of domestic violence between the respondent and the father between November, 2006, and November, 2007. The court found that during this time period, the respondent focused on completing the specific steps she and the department had agreed on for achieving reunification with her children and that the department had provided appropriate rehabilitative services. The court further found that "[the respondent] has been faithful to all of the tasks to which she was directed but did not always satisfactorily complete the programs." In March, 2007, Bryce, the fifth child of the respondent, was born. In November, 2007, the four oldest children were returned to the custody of the respondent.

On November 20, 2007, however, a serious incident of domestic violence occurred between the respondent and the father. The respondent reported to the department that on that date, the father "extensively beat her for two hours both in and out of the apartment [and] in the neighborhood." During this time, he reportedly physically assaulted her, " 'beating, kicking and dragging her both in and out of the home, in the presence of her children.' " Following the November 20, 2007 incident, the respondent took the children to live in the home of their maternal grandmother, where they continued to live until March 1, 2008, when the respondent obtained a four bedroom apartment with the assistance of the department. As a part of the specific steps that the respondent entered into with the department, she agreed that the father would no longer live in her home. On March 26, 2008, Zamora reported to the department that the father had been living in the new home and that she was afraid to go home. She also reported that she had witnessed the father hitting the

respondent. When asked, Justin and Kelsey confirmed Zamora's report. The respondent denied the allegations. On March 27, 2008, the petitioner obtained an ex parte order of temporary custody for all five children and filed a neglect petition with respect to Bryce. On October 14, 2008, the petitioner filed petitions for termination of parental rights as to Zamora, Justin, Kelsey, Evan and Bryce. On June 9, 2009, a hearing on the neglect petition as to Bryce and a trial on the termination of parental rights petitions as to all five children commenced. On September 3, 2009, in a memorandum of decision, the court found that Bryce had been neglected by the father but not neglected by the respondent, and rendered judgments terminating the parental rights of the father and denying the petitions to terminate the parental rights of the respondent. This appeal followed.

I

The petitioner first claims that the court improperly found that Bryce was not neglected by the respondent, although he was neglected by the father. More specifically, the petitioner argues that "neglect," as defined in General Statutes § 46b-120, concerns the status of the child, not the status of an individual parent or guardian. Additionally, the petitioner claims that the court improperly dismissed part of the termination of parental rights petition as to Bryce insofar as that petition applied to the respondent because of its conclusion that the respondent had not neglected Bryce. We agree.

We first set forth our standard of review. "[A]n adjudication of neglect relates to the status of the child and is not necessarily premised on parental fault. A finding that the child is neglected is different from finding who is responsible for the child's condition of neglect. Although [General Statutes] § 46b-129 requires both parents to be named in the petition, the adjudication of neglect is not a judgment that runs against a person

or persons so named in the petition; [*i*]*t is not directed against them as parents*, but rather is a finding that the children are neglected . . . . The application of a statute to a particular set of facts is a question of law to which we apply a plenary standard of review." (Citations omitted; emphasis in original; internal quotation marks omitted.) *In re T.K.*, 105 Conn. App. 502, 505–506, 939 A.2d 9, cert. denied, 286 Conn. 914, 945 A.2d 976 (2008).

Section 46b-129 provides that the petitioner may file a petition with the Superior Court alleging that a child is neglected and plainly stating facts to support the petition. Section 46b-120 defines "neglect," stating in relevant part that "(8) a child or youth may be found 'neglected' who (A) has been abandoned, (B) is being denied proper care and attention, physically, educationally, emotionally or morally, (C) is being permitted to live under conditions, circumstances or associations injurious to the well-being of the child or youth, or (D) has been abused . . . ."

The court stated in its memorandum of decision that it "grants the petition of neglect as to [the] father and denies it as to [the respondent]." Later in its memorandum of decision, the court further explained that "[the petitioner] has NOT proved by a fair preponderance of the evidence that Bryce has been neglected." The petitioner claims that the court's determination that Bryce was neglected by the father but not neglected by the respondent was improper in light of the statutory scheme and established law. Specifically, the petitioner cites *In re David L.*, 54 Conn. App. 185, 191–92, 733 A.2d 897 (1999), asserting that the holding in that case—that an allegation and adjudication of neglect concerns the status of the child and not an individual parent—applies in the present case. In the case of *In re David L.*, supra, 186–87, the respondent father appealed from the adjudication of neglect as to his minor son, claiming

that because he was named as the father of the child in the neglect petition, the adjudication of neglect applies to him, and, therefore, he had a right to be heard and to contest the adjudication. He further claimed that a trial court must determine who was responsible for the neglect before it can proceed to disposition because that determination is directly related to the justification of removal of the child from either parent's guardianship. Id., 190. This court dismissed the appeal as moot, finding that "[o]ur review of the relevant statutes leads us to conclude that an adjudication of neglect relates to the status of the child and is not necessarily premised on parental fault. A finding that the child is neglected is different from finding who is responsible for the child's condition of neglect. Although § 46b-129 requires both parents to be named in the petition, the adjudication of neglect is not a judgment that runs against a person or persons so named in the petition; [i]t is not directed against them as parents, but rather is a finding that the children are neglected . . . ." (Internal quotation marks omitted.) Id., 191–92.

In the present case, the petitioner claims that the court's determination that the child was neglected as to the father but not as to the respondent was improper. The petitioner argues that if a child is adjudicated neglected, even if the actions of only one parent created the neglectful conditions, it does not change the status of the child as neglected. We find this argument to be persuasive. "A neglect petition and concomitant request for an order of commitment are not a typical civil action. A neglect petition is sui generis and, unlike a complaint and answer in the usual civil case, does not lead to a judgment for or against the parties named." (Internal quotation marks omitted.) *In re Allison G.*, 276 Conn. 146, 158, 883 A.2d 1226 (2005). In its memorandum of decision, the court made findings illustrating why it reached the determination that Bryce was neglected as

to the father but not as to the respondent. These findings are irrelevant to the legal issue. "The statutes and rules of practice . . . do not afford a parent in a neglect proceeding the right to require the trial court to adjudge each parent's blameworthiness for a child's neglect. In fact, the rules specifically limit inquiry in the adjudicatory phase to the custodial parent in neglect proceedings and to all appearing parents in termination proceedings. Practice Book § 33-1 (b)." *In re David L.*, supra, 54 Conn. App. 193. It is undisputed that, in the present case, the respondent was the sole custodial parent. The contradictory judgment of the court regarding the status of Bryce as neglected was not rendered according to the law and cannot stand.

## II

The petitioner next claims that the court improperly applied an elevated standard of proof for a subordinate fact underlying a required element in the petitions for termination of parental rights as to Zamora, Justin, Kelsey, Evan and Bryce. More specifically, the petitioner refers to the court's finding that "[n]o clear and convincing evidence has been presented to the court to establish that [the respondent] and [the] father have been living together at any time after November, 2006," and its reliance on this finding in the court's determination that the petitioner had not met her burden to prove that the respondent had failed to rehabilitate herself. The petitioner claims that in applying this heightened standard of proof, the court did not engage in a proper assessment of her claim that the respondent had failed to rehabilitate herself, which was alleged in support of the petitions for termination of the respondent's parental rights. We agree that the court applied an improperly elevated standard of proof for this subordinate fact.

We first set forth our standard of review for this issue. "When a party contests the burden of proof applied by

the trial court, the standard of review is de novo because the matter is a question of law." (Internal quotation marks omitted.) *Smith* v. *Muellner*, 283 Conn. 510, 536, 932 A.2d 382 (2007).

General Statutes § 17a-112 (j) requires the petitioner to establish three specific elements by clear and convincing evidence in order to prevail on a termination of parental rights petition. The three elements that the petitioner had to establish by clear and convincing evidence were that (1) the department has made reasonable efforts to reunify the child with the parent in accordance with the statute, (2) termination is in the best interest of the child and (3) the child has been found in a prior proceeding to have been neglected or has been in the custody of the petitioner for at least fifteen months and that the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to § 46b-129 and has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. General Statutes § 17a-112 (j). There is no mention under the statute of a particular standard of proof for subordinate facts that may lead the trier of fact to conclude that these three required elements were proven by clear and convincing evidence.

The respondent contends that the court applied the appropriate standard of proof and that the section of the memorandum of decision at issue was "perhaps, inartfully phrased." We are not persuaded by this argument. The court directly stated the standard of proof that it was applying to its factual finding that the respondent and the father did not live together. It stated, in its written memorandum of decision, that "[n]o clear and convincing evidence has been presented to the

court to establish that [the respondent] and [the] father have been living together at any time after November, 2006," and, later in the decision, that "[the petitioner] failed to prove by clear and convincing evidence that [the] father was present and living in the family home at any time after March 8, 2008." The respondent alternatively claims that the "misstep as to this insignificant fact [was] harmless." She further claims that the issue in these cases was domestic violence, and that whether the respondent and the father were living together was of little significance. The petitioner, however, claims that because she alleged as a ground for termination that the respondent had "failed to rehabilitate," and one of the key issues in her rehabilitation was her commitment to providing a safe environment for the children, any ongoing relationship between the respondent and the father was relevant as a subordinate fact to the court's eventual finding of whether the respondent had, in fact, failed to rehabilitate herself. We agree with the petitioner.

Our courts have addressed squarely the issue of the requisite standard of proof for a subordinate fact in the context of criminal cases, in which the requisite standard of proof necessary to establish the required elements of the charges at issue is proof beyond a reasonable doubt. "Where a group of facts are relied upon for proof of an element of the crime it is their cumulative impact that is to be weighed in deciding whether the standard of proof beyond a reasonable doubt has been met and each individual fact need not be proved in accordance with that standard. It is only where a single fact is essential to proof of an element, however, such as identification by means of fingerprint evidence, that such evidence must support the inference of that fact beyond a reasonable doubt." *State* v. *McDonough*, 205 Conn. 352, 355, 533 A.2d 857 (1987), cert. denied, 485 U.S. 906, 108 S. Ct. 1079, 99 L. Ed. 2d

238 (1988). " 'There must be proof beyond a reasonable doubt of all the elements of the crime and the defendant's participation or responsibility, but not of each evidentiary fact.' . . . LaFave & Scott, Criminal Law (1972) § 4, p. 16. It is only where a particular subordinate fact is essential to the proof of an element of the crime that it must be proved beyond a reasonable doubt." *State* v. *Rodgers*, 198 Conn. 53, 58 n.1, 502 A.2d 360 (1985). This legal reasoning can be applied with equal force in the context of the standard of proof for termination of parental rights petitions, such as the ones in the present cases. Under this reasoning, while the court must have found by clear and convincing evidence the three elements of § 17a-112 (j), any subordinate facts that, together, led the court to the conclusion that those elements have been met need not be proven by that heightened standard of proof. We conclude, therefore, that the court improperly applied the heightened standard of proof of "clear and convincing evidence" to a subordinate fact.

The judgments are reversed and the cases are remanded with direction to reconsider the petitions for adjudication of neglect and termination of parental rights and for further proceedings according to law.

In this opinion the other judges concurred.