IN RE JASON R. ET AL.*
(AC 32651)

Robinson, Bear and Dupont, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued April 14—officially released June 28, 2011

*Erich Henry Gaston,* for the appellant (respondent mother).

*Tammy Nguyen-O'Dowd,* assistant attorney general, with whom, on the brief, were *George Jepsen,* attorney general, and *Benjamin Zivyon,* assistant attorney general, for the appellee (petitioner).

BEAR, J. The respondent mother (respondent)[1] appeals from the judgments of the trial court rendered in favor of the petitioner, the commissioner of children and families (petitioner), terminating her parental rights as to two of her children, Jason R. and Fernando R. (children).[2] On appeal, the respondent claims that the court improperly (1) shifted the burden of proof to her on the issue of her personal rehabilitation, (2) concluded that the department of children and families (department) had made reasonable efforts to reunify her with Jason and Fernando, and (3) found that she had failed to achieve a sufficient degree of rehabilitation. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to our review. The respondent was born in Hartford in 1989. The respondent's mother had a history of substance abuse, and the respondent was raised by her grandmother. The department's involvement with the respondent began when she was a teenager. At that time, the respondent had mental health and behavioral problems.

Fernando and Jason were born less than one year apart in 2006 and 2007, respectively.[3] On December 13, 2007, the petitioner filed with the court neglect petitions and motions seeking ex parte orders of temporary custody of the children. These motions were denied by the

[1] The court also terminated the parental rights of the respondent father of the children at issue. The respondent father has not appealed from the judgments of the trial court with respect to his parental rights. We, therefore, refer to the respondent mother as the respondent.

[2] The respondent has another child, J, to whom she gave birth in May, 2005. The respondent was unable to care for J, and the respondent's grandmother became J's legal guardian. The respondent still maintains a relationship with J, who is not a party to these proceedings.

[3] The respondent was fifteen years old when J was born; see footnote 2 of this opinion; sixteen years old when Fernando was born and seventeen years old when Jason was born.

court. On January 25, 2008, believing that the children were in imminent risk of physical harm from their surroundings and that immediate removal from such surroundings was necessary to ensure their safety, pursuant to General Statutes § 17a-101g, the department removed the children from the respondent, and they have been in the petitioner's custody since that date. On January 28, 2008, the petitioner again filed motions seeking ex parte orders of temporary custody of the children, and those motions were granted by the court. On February 1, 2008, the court sustained the orders of temporary custody. On April 8, 2008, the respondent entered a plea of nolo contendere to the neglect allegations concerning each of the children, the court adjudicated each child neglected pursuant to General Statutes § 46b-120 (9) (B) and (C), and the court committed each child to the care, custody and guardianship of the commissioner pursuant to General Statutes § 46b-129 (j). The children were placed together in a preadoptive foster home, and the children's foster mother has expressed a willingness to allow the respondent to have a relationship with the children if she is able to adopt them. The children have strong bonds with both the respondent and their foster parents.

Both prior to and after the removal of the children from the respondent's custody, the department provided the respondent with services dealing with her mental health, substance abuse, parenting education and housing issues and needs. A series of department social workers worked with the respondent to reunite the family. Additionally, after the children were removed from her care and custody, the department provided visitation services to the respondent in a variety of venues with varying degrees of supervision.

In addition to direct services, the department offered the respondent support and services from other agencies. From August 12 until December 30, 2008, the

respondent received individual counseling at Catholic Charities. The focus of the counseling was on stabilizing the respondent and "creating a home environment that would allow reunification." This service was discontinued because the respondent "continued to show no consistent progress. She continued exhibiting signs of being extremely overwhelmed when faced with simple requests regarding working toward reunification. . . . She poorly demonstrates her ability to take initiative in making decisions for herself or for her family on her own. She expressed that she had a low tolerance level for stress and anger. She does show that she cares for her children; however, she seemed to lack the understanding of the importance of proving that she was able to maintain the family on her own without assistance." (Internal quotation marks omitted.) Catholic Charities recommended that the respondent "address her mental health issues and receive assistance obtaining medical insurance so she can be able to receive individual therapy." (Internal quotation marks omitted.) The respondent also was prescribed medication, but she often did not take it. She stated she did not need the medication or that she could not obtain it because of insurance problems.

In October, 2008, the respondent participated in a court-ordered evaluation by Logan L. Green, an expert in forensic and clinical psychology. Green reported that the respondent had achieved a wide range of scores on various performance criteria. The respondent's verbal IQ was 77, which ranked at the sixth percentile and is classified as "borderline." The respondent's performance IQ was 103, which ranked at the fifty-eighth percentile and is classified as "normal functioning." Green concluded that "[a] verbal-performance difference of this size is suggestive of learning disabilities, poor academic achievement, poor reading ability, and at times left hemisphere or diffuse brain damage."

Green also noted that the respondent's "exceptional guardedness and extremely idealized self-presentation prevents interpretation of her capacity for bonding. Therefore, the extent to which she is capable of offering relatively consistent parental love could not be determined." Green diagnosed the respondent with anxiety disorder with compulsive defenses, dysthymic disorder and obsessive-compulsive disorder. Green recommended that the respondent be evaluated to determine whether she had attention deficit hyperactivity disorder [ADHD] and that she receive psychological treatment with appropriate medication therapy, academic and vocational training, reliable support from family and practical training to plan and monitor solutions to everyday problems. Green also recommended a parenting education program called Parent/Child Interactive Therapy (parenting program) in which the respondent would be observed interacting with her children through a one-way mirror while being directed by the observer through the use of an earpiece. Green, however, was not sure if the parenting program would be an available option and stated that "parenting training that allows for feedback immediately after the interaction session . . . would certainly be acceptable."

Following Green's evaluation and report, the department recommended to the respondent that she attend the intensive outpatient program at the Rushford Center, where she began receiving services in February, 2009.[4] The respondent was discharged from this program in March, 2009, because of poor attendance. She returned to the Rushford Center in April, 2009, where she participated in the program. She completed the

---

[4] The Rushford Center previously had provided mental health services to the respondent after a declaration that she would commit suicide if the children were taken by the department. The respondent claims that the statement was an exaggeration designed to persuade the department not to take the children.

program satisfactorily and was referred to the "women seeking safety trauma group."

The department then asked that the Rushford Center prepare another intake evaluation on May 14, 2009, because of the respondent's acknowledged use of marijuana. The respondent was tested for marijuana on twenty occasions between October 3, 2008, and December 15, 2009. Five of those test results were positive and fifteen were negative. The respondent acknowledged that she had begun using marijuana when she was twelve years old and that she continues to use it.

The respondent also attended sessions at Family Matters, a center for child visitation and clinical parenting consultation, from April 9 to May 28, 2009. Family Matters provided supervised visitation with a parent education and feedback component. Family Matters also recommended that the department follow steps "to assure a safe and positive transition for Jason and Fernando to [the respondent's] home" and noted the respondent's "significant progress."

Approximately sixteen months after the children were placed in the custody of the petitioner, on June 8, 2009, the petitioner filed petitions to terminate the parental rights of the respondent and the father as to Fernando and Jason. Pursuant to General Statutes § 17a-112 (j), the petitioner alleged that the department had made reasonable efforts to reunify each of the children with the respondent, termination was in the best interest of each of the children and, pursuant to § 17a-112 (j) (3) (B), the children previously were adjudicated neglected in a prior proceeding and that the respondent had failed to achieve a degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of each of the children, the respondent could assume a responsible position in their lives.

After the petitioner filed the termination of parental rights petitions, the department continued to provide services to the respondent. From August 7 to November 7, 2009, the respondent received services at Community Residences, Inc., a family reunification and preservation program supported by the department. Community Residences, Inc., provided the respondent with supervised visitation, parent education and feedback. Community Residences, Inc., continued to work with the respondent through February, 2010. Its final evaluation and recommendation described the respondent's "moderate improvements" in utilizing parenting techniques. The respondent indicated that she felt "badly about providing consequences for inappropriate behaviors" by her children because she believed the purpose of the visits was to "provide a fun and enjoyable experience for her children." The respondent believed that the children displayed inappropriate behavior because her authority was undermined by the presence of the social worker giving her directions. The social worker transitioned visits from the community to the department offices when the children's behavior became "unsafe or unmanageable . . . ." Community Residences, Inc., found that the children's behavior was easier to manage in a controlled environment and that it was significantly more appropriate while in the care of the foster mother. Community Residences, Inc., also noted that the respondent "clearly loves her children and appropriately shows them affection during visits . . . ."

The record also reveals the following. On some occasions, the respondent chose not to participate in programs to which she was referred by the department. For individual counseling, the department referred the respondent to Community Health Center and to Path, but she did not follow up with the referrals. The respondent eventually attended Community Health Center for

mental health treatment, but missed her initial intake appointment in July, 2009, and did not complete the intake until August, 2009. The respondent missed several of her scheduled sessions at Community Health Center. The department also referred the respondent to domestic violence programs. She was referred to Chrysalis for a support group that she never attended and to Catholic Charities for a support group that she attended briefly.

The respondent's housing situation varied throughout the progress of this case. In January, 2008, the respondent was being evicted from her apartment. The department located a shelter for the respondent and her children, but, after a couple of days, the respondent refused to stay there with the children. Following the children's removal from her on January 28, 2008, the respondent became transient and stayed with friends. The department thereafter referred the respondent to the Supportive Housing Program. During the summer of 2008, the department paid a security deposit so the respondent could obtain an apartment. The respondent was unable to maintain this apartment and was evicted in January, 2009, for nonpayment of rent. The respondent then secured a one bedroom apartment through supportive housing.[5] The hearing on the termination of parental rights petitions took place on March 8 and 10, 2010, approximately twenty-five months after the children were removed from the respondent and placed in foster care. On July 8, 2010, the court, *Baldwin, J.,* issued a memorandum of decision granting the petitions. The court found that the department "has made reasonable efforts to reunite [the respondent and the children], including engagement of rehabilitation services that enhanced [the respondent]'s caregiving

---

[5] At trial, the petitioner noted that if the respondent was found to be abusing substances and not cooperating with department services, she would be noncompliant with the requirements of supportive housing.

skills." The court stated that "[a]s of the date of trial [the respondent] had not made significant progress to persuade the court by clear and convincing evidence that she had met the objectives identified by Dr. Green as important for reunification." The court found that "[t]he record and exhibits also establish that [the respondent] continued to use marijuana through 2009 and into 2010. That fact continues to generate concern that [the respondent]'s cognitive deficits and continued self-medication raise serious doubts about her ability to care for her two boys." However, the respondent "worked to be reunited with her two boys beginning the day that [the department] invoked the ninety-six hour hold. Her relationship with [the department] has been clumsy at times, and she has resented having to meet the requirements of the reunification plan. But she actively participated in most of the required services in a constructive way. She cooperated with her psychological evaluation and testing, she acknowledged her weaknesses, and she has demonstrated that she is willing to continue to work with [the department] toward reunification."

In the dispositional finding required pursuant to § 17a-112 (k) (1),[6] the court stated that the respondent did "not [establish] to the court's satisfaction that she is prepared educationally or emotionally to assume the primary care role of caring for [the children]." In the

[6] General Statutes § 17a-112 (k) provides in relevant part: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent . . . (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order . . . and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

dispositional finding required pursuant to § 17a-112 (k) (3); see footnote 6 of this opinion; the court found that the respondent "has not fully complied with substance abuse orders of the court. Her compliance with some court orders has been difficult for her because she is cognitively compromised. She has been faithful to her visitation opportunities and has been reasonably compliant with services offered to her. However, she has not always been able to sustain her commitment to services that challenge her cognitive abilities." In the dispositional finding required pursuant to § 17a-112 (k) (7); see footnote 6 of this opinion; the court further stated that the respondent has "taken full advantage of every opportunity to build and sustain a relationship with her children and has been successful in that effort. [The respondent] and [the children] would be well served by continuing contact with each other after the permanency decisions have been implemented."[7]

On August 16, 2010, pursuant to Practice Book §§ 11-11, 34a-1 (b) and 63-1, the respondent filed a motion for reconsideration, reargument and/or articulation, arguing, inter alia, that the court's statement that " '[the respondent] had not made significant progress to persuade the court by clear and convincing evidence that she had met the objectives identified by Dr. Green as important for reunification' " indicates that the court improperly shifted the burden of proof on the issue of personal rehabilitation to the respondent. After oral argument on September 3, 2010, the court, on September 24, 2010, issued a written decision that denied the relief sought on reargument and reconsideration. In the decision, the court agreed with the respondent that some of the language of the memorandum of decision "suggest[ed] a shifting of the burden of proof to [the

---

[7] As set forth in the court's memorandum of decision, the "permanency decisions" referred to by the court were termination of the respondent's parental rights and adoption of the children. "Continued contact" by a biological parent after termination of parental rights is sometimes referred

respondent]." The court stated, however, that its "intention was to conclude that [the respondent] had an obligation to meet the requirements of her specific steps in order to be reunited with her two sons. Those steps included the following requirements: 1. Submit to substance abuse assessment and follow recommendations regarding treatment, including in-patient treatment if necessary, aftercare and relapse prevention; 2. Submit to random drug testing—time and method of the testing shall be at the discretion of [the department]; 3. Cooperate with recommended service providers . . . substance abuse assessment/treatment; 4. Cooperate with recommended court-ordered evaluations or testing; and 5. Not engage in substance abuse. The record demonstrates her repeated resistance to full cooperation with offered [department] services to a successful conclusion. The court concluded that [the department] had proved by clear and convincing evidence that, over the period of commitment, [the respondent] had not addressed successfully her mental health issues, her substance abuse issues, her housing needs, and her ability to set limits on [the] children's behavior." This appeal was filed on October 12, 2010.[8]

I

The respondent claims that the trial court erred by improperly shifting the burden of proof to her on the issue of personal rehabilitation. She further argues that, in its subsequent articulations, the court improperly departed from the reasoning contained in the memorandum of decision and that the articulations and the memorandum of decision were in contradiction. We disagree.

to as "open adoption." See *In re Samantha S.*, 300 Conn. 586, 587, 15 A.3d 1062 (2011).

[8] The respondent filed another motion for articulation on November 10, 2010. The court then issued a further articulation dated December 28, 2010, in which it stated that the memorandum of decision "read in its entirety clearly articulates that the court's conclusion that [the department] provided [the respondent] with the opportunity and services necessary to address

"When a party contests the burden of proof applied by the trial court, the standard of review is de novo because the matter is a question of law." *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 455, 844 A.2d 836 (2004). The respondent contends that the court's separate statements that "[the respondent] had not made significant progress to persuade the court by clear and convincing evidence that she had met the objectives identified by Dr. Green as important for reunification" and that "[the respondent] has not established to the court's satisfaction that she is prepared educationally or emotionally to assume the primary role of caring for her children" indicate that the court improperly shifted the burden of proof to her on the issue of personal rehabilitation.[9]

First, we note that, even when taken in isolation from the rest of the memorandum of decision, the statement that the respondent "had not made significant progress to persuade the court by clear and convincing evidence that she had met the objectives identified by Dr. Green as important for reunification" does not imply necessarily that the court shifted the burden of proof on the issue of personal rehabilitation to the respondent, or that she had to produce evidence in addition to that already in the record. Instead, the court expressed its

---

the issues upon which the original commitment was based, and [that the respondent] failed to take full advantage of those services or rehabilitation to a degree that reunification was appropriate."

[9] The court made this statement in connection with the findings required to be made by § 17a-112 (k) (1). See footnote 6 of this opinion. The court stated in full: "1. [The respondent] and [the children's father] were offered services specific to their needs and deficits in a timely manner. [The children's father] consistently refused services since the beginning of [department] involvement. [The respondent] was offered and [the department] provided services dealing with mental health, substance abuse, parenting and housing. Although [the respondent] has worked hard to take advantage of those services and has completed some of them, she has not established to the court's satisfaction that she is prepared educationally or emotionally to assume the primary care role of caring for her children." Although not mentioned by the respondent in her brief, these findings were made in connection with whether termination of parental rights is in the best interest of the child, e.g., in the dispositional phase of the trial. See *In re Sarah O.*, 128 Conn. App. 323, 332–33, 16 A.3d 1250 (2011).

finding that the evidence presented by the petitioner and already in the record demonstrated that the respondent had made progress, and that she should be proud of that progress, but that the court could not find by clear and convincing evidence that she had met the objectives identified by Green as important for her reunification.[10] The petitioner had proven that the respondent had not met those goals, although the evidence also indicated that the respondent had made some progress, but not sufficient progress to rehabilitate to the point where reunification was possible. Even if the court may have used unclear phraseology, we are not persuaded that the language employed evinces an improper shifting of the burden of proof to the respondent on the adjudicatory ground of personal rehabilitation.

Furthermore, reviewing the court's decision in its entirety, it is evident that the court required the petitioner to prove her case by the clear and convincing evidence standard of proof. On the first page of the memorandum of decision, the court states that "[i]n order to prevail on its allegations with respect to termination of [a] parent's rights, the attorney general must

[10] We note that Green's recommendations generally focused on how to achieve the respondent's parenting and individual therapy goals. However, in the respondent's specific steps that were ordered by the court for the goal of reunification; see, e.g., General Statutes § 46b-129 (c) and (j); the court instructed the respondent to meet additional goals including, inter alia, "[k]eep all appointments set by or with [the department]," "participate in counseling and make progress toward" parenting and individual treatment goals, "[s]ubmit to substance abuse assessment and follow recommendations regarding treatment, including in-patient treatment if necessary, aftercare and relapse prevention," "secure and/or maintain adequate housing and legal income," and "[n]ot engage in substance abuse." The petitioner introduced evidence that the respondent was regularly self-medicating with marijuana, that the respondent believed that she did not need to take the medication that had been prescribed to her, was having difficulty maintaining housing consistently and failed to keep appointments set by the department. Even if we assume that the court improperly placed the burden of proof on the respondent with respect to Green's recommendations, the petitioner introduced ample evidence both to demonstrate to the court and to allow

prove by clear and convincing evidence that . . . [the respondent has] failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, such [parent] could assume a responsible position in the life of the children . . . ." The court then enumerates the services that the department offered to the respondent, the respondent's efforts to comply with the services, the respondent's deficiencies in compliance and the respondent's consequent lack of progress toward rehabilitation. The court then states that "[w]ith respect to [the respondent] the court finds that [the petitioner] has proved by clear and convincing evidence that [the] [c]hildren have been found to have been neglected in a prior proceeding and [that the respondent] has failed to achieve such [a] degree of personal rehabilitation as would encourage the belief that within a reasonable time . . . she could assume a responsible position in [the] children's lives." See General Statutes § 17a-112 (j) (3) (B). This language evinces the court's recognition that the burden of proof was on the petitioner, that it required the petitioner to meet that burden, and that the petitioner did meet that burden.

Our conclusion is further guided by our decision in *State* v. *Sherbacow*, 21 Conn. App. 474, 480–82, 574 A.2d 817, cert. denied, 216 Conn. 808, 580 A.2d 65 (1990). In *Sherbacow*, the defendant on appeal claimed that the trial court had "diluted the state's burden to prove each essential element beyond a reasonable doubt, and placed a burden on the defendant to prove some fact, hypothesis or theory consistent with innocence." Id., 481. As in the present case, the defendant in *Sherbacow* relied on "two portions of the court's decision, the first that the court was 'unable reasonably to draw from that evidence any conclusion or hypothesis consistent with the innocence of this accused,' and the second, the

the court to find, by clear and convincing evidence, that the respondent had failed to rehabilitate.

court's reliance on *Hill* v. *State*, 666 S.W.2d 130 (Tex. 1983), for the proposition that a defendant's unexplained presence at a crime scene can be used to corroborate the testimony of an accomplice." *State* v. *Sherbacow*, supra, 481–82. This court, in reviewing the statements in the context of the entire decision, concluded that the court had (1) applied the proper burden of proof, noting that the court "properly stated the law in that portion of the transcript immediately preceding the court's statement to which the defendant excepts"; id., 481; and (2) "neither intended to shift, nor did it shift, the burden to the defendant, thereby requiring him to testify." Id., 482.

In a similar fashion, we have analyzed the memorandum of decision at issue in the present case in its entirety and conclude that the court did not shift the burden of proof onto the respondent with respect to the adjudicatory ground of failure to rehabilitate or the dispositional ground of best interests of the children.[11] The court, quite clearly, on at least two occasions stated that the petitioner bore the burden of proof by clear and convincing evidence on both grounds. The court's repeated references to the proper standard of proof demonstrates that the court was aware that the petitioner had the burden of proving, by clear and convincing evidence, that the respondent had failed to rehabilitate and that termination was in the best interests of the children. See *Vernon* v. *Goff*, 107 Conn. App. 552, 559–60, 945 A.2d 1017, cert. denied, 289 Conn. 920, 958 A.2d 154 (2008); *State* v. *Sherbacow*, supra, 21 Conn.

---

[11] The context of the § 17a-112 (k) (1) required finding in which the challenged language appears in relevant part is as follows: "[The respondent was] offered services specific to [her] needs and deficits in a timely manner. . . . [The respondent] was offered and [the department] provided services dealing with mental health, substance abuse, parenting and housing. Although [the respondent] has worked hard to take advantage of those services and has completed some of them, she has not established to the court's satisfaction that she is prepared educationally or emotionally to assume the primary care role of caring for her children." As with the first challenged statement of the court, although the court's language is not as clear as it could be, the context of the second challenged statement is

App. 480–82. It seems apparent, when taken in context, that the challenged statements were intended to highlight the respondent's insufficient progress in addressing the issues that had led to the children's commitment, including the respondent's failure to fulfill all of the recommendations of Green and all of the requirements of the court-ordered specific steps. The petitioner had introduced significant evidence of the respondent's ongoing mental health issues, cognitive limitations, parenting deficiencies and substance abuse problems, inter alia, and the court commented that the evidence demonstrated that, although the respondent had made some progress in her efforts to achieve reunification with the children, the petitioner had met her burden to establish all of the relevant elements of § 17a-112 (j)[12] by clear and convincing evidence.[13]

the evidence in the record about the respondent, her history, problems, successes, failures, needs, circumstances, compliance or lack thereof, most of which was provided by the petitioner, and not that the respondent had an independent burden of proof to be satisfied by her testimony or by other evidence in her favor and judgment was entering against her because she failed to do so.

[12] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts, except that such finding is not required if the court has determined at a hearing pursuant to section 17a-111b, or determines at trial on the petition, that such efforts are not required, (2) termination is in the best interest of the child, and (3) . . . (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[13] The respondent further argues that these statements indicate that the court improperly drew an adverse inference against her at trial because of her failure to testify without properly notifying her that such an inference could be drawn. The respondent claims that this is a violation of Practice

Because she recognized that the statements she challenged arguably might be susceptible to differing interpretations, the respondent requested that the court, inter alia, articulate the meaning of the language employed. "It is well established that a motion for articulation may be used to clarify the factual or legal basis of the trial court's ruling." *Walshon* v. *Walshon*, 42 Conn. App. 651, 656, 681 A.2d 376 (1996). "[A]n articulation presupposes ambiguity or incompleteness in the legal reasoning of the trial court in reaching its decision. An articulation may be necessary where the trial court fails completely to state any basis for its decision . . . or where the basis, although stated, is unclear." (Citations omitted.) *State* v. *Wilson*, 199 Conn. 417, 434, 513 A.2d 620 (1986).

In response to the respondent's request, the court, inter alia, agreed with the respondent that some of the language of the memorandum of decision "suggest[ed] a shifting of the burden of proof to [the respondent]." The court stated, however, that its "intention was to conclude that [the respondent] had an obligation to meet the requirements of her specific steps in order to be reunited with her two sons . . . [and that] [t]he record demonstrates her repeated resistance to full cooperation with offered [department] services to a successful conclusion. The court concluded that [the department] had proved by clear and convincing evidence that, over the period of commitment, [the respondent] had not addressed successfully her mental health

Book § 35a-7A, which states that "[i]f a party requests that the judicial authority draw an adverse inference from a parent's or guardian's failure to testify or the judicial authority intends to draw an adverse inference, either at the start of any trial or after the close of the petitioner's case-in-chief, the judicial authority shall notify the parents or guardian that an adverse inference may be drawn from their failure to testify." See also *In re Samantha C.*, 268 Conn. 614, 671–73, 847 A.2d 883 (2004). We do not find anything in the court's memorandum of decision that indicates to us that the court drew an adverse inference from the respondent's decision not to testify.

issues, her substance abuse issues, her housing needs, and her ability to set limits on [the] children's behavior."

After filing the present appeal, the respondent again asked the court to articulate whether it improperly had shifted the burden of proof to her. In response, the court again articulated that the language it had used "suggest[s] the alleged shift of burden." It explained, however, that "the decision read in its entirety clearly articulates . . . the court's conclusion that [the department] provided [the respondent] with the opportunity and services necessary to address the issues upon which the original commitment was based, and [that the respondent] failed to take full advantage of those services or rehabilitate to a degree that reunification was appropriate. The court's decision, taken as a whole, finds that [the department] made reasonable efforts to reunite [the respondent] and the children and that termination of her parental rights was in [the] children's best interest."

Although the respondent argues that the court's articulations were an improper revision of its memorandum of decision, we do not agree. As stated previously, read as a whole, the court's memorandum of decision clearly sets forth that the petitioner has the burden of proof by clear and convincing evidence to prove the adjudicatory ground of the respondent's failure to rehabilitate and the dispositional ground that termination of parental rights is in the best interest of the child, and that the petitioner met those requirements. The articulations served to further clarify that the court had employed the correct standard.

In *Walshon* v. *Walshon*, supra, 42 Conn. App. 655–56, the defendant had claimed that the trial court improperly had applied the wrong standard and that it had attempted to substitute a new decision by means of its articulation. This court disagreed. Id., 656. First, this

court concluded that although the certain portions of the "decision . . . standing alone, could be interpreted as indicating that the trial court applied the wrong standard," reviewing the decision as a whole, we further concluded that "the trial court consistently expressed its underlying finding, namely, that it could not find a material change of circumstances . . . ." Id., 655. We then looked at the articulation, which clearly stated the correct legal standard, and concluded that the court had not improperly substituted a new decision but, rather, had properly had clarified its original decision. Id., 656. Although the present case concerns a burden of proof rather than a standard of proof, we conclude that the method employed in *Walshon*, namely, reviewing the decision as a whole and the articulation in light thereof, is proper. In following this method, it is clear in the present case that the court required the petitioner to meet her burden of proof.

The respondent also argues that the court's articulations conflict with its memorandum of decision in which it stated that the respondent "has made significant efforts to comply with her court-ordered specific steps."[14] Specifically, she alleges conflict between that statement and the portions of the court's articulations in which it found that "[t]he record demonstrates her repeated resistance to full cooperation with offered [department] services to a successful conclusion," that "[the department] provided [the respondent] with the opportunity and services necessary to address the issues upon which the original commitment was based, and [that the respondent] failed to take full advantage of those services or rehabilitate to a degree that reunification was appropriate." The respondent alleges that this conflict demonstrates that the court impermissibly

---

[14] Unfortunately, also, not every effort to comply results in meaningful substantive compliance.

substituted a new decision or changed the reasoning or basis of its original decision. We do not agree.

The allegedly contradictory statements in the memorandum of decision were intended to credit the respondent for showing some progress with rehabilitation efforts. However, the respondent was unable "to sustain her commitment and create a welcome and secure permanent environment" for the children.[15] In recognition of the respondent's positive but limited efforts, the court concluded that the respondent and the children "would be well served by continuing contact with each other after the permanency decisions have been implemented."[16] The court thus recognized that the respondent made some progress with respect to her rehabilitation efforts, but such progress did not encourage the belief that she could assume responsibility for the children's care on a full-time basis.[17] In its articulations, the trial court, however, did not attempt to substitute a new decision nor change the reason or basis of

[15] A "secure permanent environment" and other aspects of a child's best interests have been repeatedly described in our opinions as follows: "In the dispositional phase of a termination of parental rights hearing, the emphasis appropriately shifts from the conduct of the parent to the best interest of the child. . . . It is well settled that we will overturn the trial court's decision that the termination of parental rights is in the best interest of the children only if the court's findings are clearly erroneous. . . . *The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of [his or her] environment.* . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child." (Emphasis added; internal quotation marks omitted.) *In re Sarah O.,* 128 Conn. App. 323, 340, 16 A.3d 1250 (2011).

[16] These statements are in sharp contrast with the court's statements regarding the children's father, who "has not been a meaningful part of [the] children's lives. Any attempt to develop a relationship between [the] [f]ather and [the] children would be contrary to [the] children's best interest."

[17] To support her argument that the court improperly shifted the burden of proof on the issue of personal rehabilitation, the respondent relies on *In re Zamora S.,* 123 Conn. App. 103, 998 A.2d 1279 (2010). In *In re Zamora S.,* the petitioner appealed to this court from the judgments of the trial court denying termination of the respondent's parental rights. Id., 105. This court

the July 8, 2010 memorandum of decision. There was nothing in the articulations that contradicted the substance of the court's decision that, although the respondent had made some progress in her rehabilitation efforts, the petitioner had demonstrated, by clear and convincing evidence, that she had failed to rehabilitate. Accordingly, we reject the respondent's claims that the court improperly shifted the burden of proof to her to disprove that she had failed to rehabilitate and that it was in the best interest of the children for her parental rights to be terminated.

## II

The respondent also claims that the court erred in concluding that the department had made reasonable efforts to reunify the respondent and her children. We disagree.

"In order to terminate parental rights under § 17a-112 (j), the department is required to prove, by clear and convincing evidence, that it has made reasonable efforts . . . to reunify the child with the parent, unless the court finds . . . that the parent is unable or unwilling to benefit from reunification . . . . [Section 17a-112] imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and

held that the trial court, in finding that no clear and convincing evidence had been presented to establish that the respondent mother and the respondent father had been living together at any time after November, 2006, improperly applied an elevated *standard of proof* for that subordinate fact, on which the court had relied in finding that the petitioner had not met her burden to prove that the mother had failed to achieve sufficient personal rehabilitation. Id., 111. In *In re Zamora S.*, this court decided what *standard of proof* is required for subordinate facts and did not address substantively the issue of shifting the *burden of proof* from the petitioner to the respondent. *In re Zamora S.*, therefore, is distinguishable from this case.

convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible. . . . The trial court's determination of this issue will not be overturned on appeal unless, in light of all of the evidence in the record, it is clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made." (Citation omitted; internal quotation marks omitted.) *In re Devon W.*, 124 Conn. App. 631, 642, 6 A.3d 100 (2010).

In its memorandum of decision, the court found that the department had made reasonable efforts to reunite the respondent with her children. The record supports the court's conclusion that the respondent "was offered and [the department] provided services dealing with mental health, substance abuse, parenting and housing [issues]."

The respondent argues that the department's efforts fell short of what was reasonable because the department did not provide her with the type of parenting program recommended by Green in his October, 2008 evaluation. Green recommended that the respondent participate in a program where an observer would take notes during the visit and review the appropriateness of her conduct and provide her with suggestions for the next visit. Green recommended a parenting program from a specific provider, in which the respondent would be observed interacting with her children through a one-way mirror while being directed by the observer through the use of an earpiece, but he also suggested that any "parenting training that allows for feedback immediately after the interaction session . . . would certainly be acceptable." Green testified at trial that

"having an observer who simply observed and then gave feedback at the end, allowing [the respondent] to take written notes and then going over those notes, allowing [the respondent] to do homework, essentially, by following or reviewing the notes; that would be all right." The department contacted the recommended parenting program provider and learned that the agency had a long waiting list. Rather than delay treatment, the department had Family Matters tailor the respondent's visits to fit the recommendations of Green.[18] Consequently, the fact that the department did not provide the respondent with access to the specific parenting program suggested by Green because of a long waiting list does not lead us to conclude that the trial court's finding that the department had made reasonable efforts to reunify the respondent and her children was clearly erroneous.

The respondent also argues that the department failed to make reasonable efforts to reunify her with her children because, in his October, 2008 report, Green recommended an evaluation of the respondent to determine if she had ADHD and the evaluation was not completed until a year later.[19] The respondent argues that, in the absence of the evaluation, the department was unable to tailor services to the specific needs of the respondent. At trial, Green stated that he recommended the evaluation because the respondent "told me many symptoms during the interview that are associated with ADHD," and he sought to "determine whether there was, in fact, [ADHD] so I could differentiate that from some form of mood dysregulation, to determine whether her IQ difficulties were so serious that it might

---

[18] At Family Matters, the respondent visited with the children while a therapist observed them through a one-way mirror. Following the visit, the therapist would meet with the respondent and review the interactions between the respondent and the children.

[19] Following the evaluation, Green was able to rule out ADHD.

enter the realm of mental retardation, and to determine whether her adaptive behavior skills—her ability to get along in the world—were at such a level that she would require some form of daily aide."

We are mindful that "[r]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *In re Samantha C.*, 268 Conn. 614, 632, 847 A.2d 883 (2004). The failure of the department to provide an evaluation that may have been beneficial does not mean necessarily that a court's finding that the department made reasonable efforts was clearly erroneous. See *In re Melody L.*, 290 Conn. 131, 147, 962 A.2d 81 (2009) ("[e]ven if the evidence had established that additional family therapy might have been beneficial, such evidence does not render the trial court's finding clearly erroneous"); *In re Alexander T.*, 81 Conn. App. 668, 673, 841 A.2d 274 ("[i]n light of the entire record, the failure to provide the referral, while a lapse, does not make the overall efforts of the department fall below the level of what is reasonable"), cert. denied, 268 Conn. 924, 848 A.2d 472 (2004); *In re Ebony H.*, 68 Conn. App. 342, 350, 789 A.2d 1158 (2002) ("[n]otwithstanding the court's finding that the department's response to the respondent's request for assistance in obtaining housing was shameful and unacceptable, our review of the evidence admitted at the trial does not leave us with a definite and firm conviction that the court mistakenly found that the department had made reasonable efforts to reunify the respondent and the child").

Furthermore, the record is replete with examples of what the court described as the respondent's "clumsy" relationship with the department. The record reveals that the delay in the respondent's ADHD evaluation was due, in part, to the respondent's own lack of engagement in the rehabilitation process. In viewing the record in

its entirety, we are not persuaded that the court's finding that the department had made reasonable efforts to reunite the respondent and her children was clearly erroneous.

## III

The respondent's final claim is that the trial court erred in finding that she failed to achieve personal rehabilitation. We disagree.

In order to terminate parental rights under the adjudicative ground set forth in § 17a-112 (j) (3) (B), the petitioner is required to prove, by clear and convincing evidence that "the child . . . has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

"[W]e review a trial court's finding that a parent has failed to rehabilitate herself in accordance with the rules that apply generally to a trier's finding of fact. We will overturn such a finding of fact only if it is clearly erroneous in light of the evidence in the whole record. . . . [G]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [O]n review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Jordan T.*, 119 Conn. App. 748, 755, 990 A.2d 346, cert. denied, 296 Conn. 905, 992 A.2d 329 (2010).

We have reviewed the record and conclude that it supports the court's conclusion that the respondent failed to achieve a degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the ages and needs of the children, the respondent could assume a responsible position in the children's lives. The record indicates that, at the time of trial, the respondent continued, inter alia, to have difficulties with parenting the children and regulating their behavior when she was with them, with her suggested medication regimen and management, and with marijuana use. While the record suggests that the respondent, after the children were committed to the petitioner, made some progress in her ability to care for herself, "in assessing rehabilitation, the critical issue is not whether the parent has improved her ability to manage her own life, but rather whether she has gained the ability to care for the particular needs of the child at issue." (Internal quotation marks omitted.) *In re Shyliesh H.*, 56 Conn. App. 167, 180, 743 A.2d 165 (1999).

Furthermore, in its memorandum of decision, the trial court put particular emphasis on the opinion of Green concerning the respondent's issues, limitations and need for personal rehabilitation before she could provide a continuous safe, secure and stable environment for the children.[20] "The testimony of professionals is given great weight in parental termination proceedings. . . . It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible. . . . On

[20] In its memorandum of decision, the court noted that Green's psychological evaluation report was a "compelling document."

appeal, we do not retry the facts or pass on the credibility of witnesses. . . . It is the quintessential function of the fact finder to reject or accept certain evidence, and to believe or disbelieve any expert testimony. . . . The trier may accept or reject, in whole or in part, the testimony of an expert offered by one party or the other." (Citations omitted; internal quotation marks omitted.) *In re Carissa K.*, 55 Conn. App. 768, 781–82, 740 A.2d 896 (1999). At trial, Green testified that the respondent had mental health problems that required extensive additional therapy. He concluded that the respondent needed to address her own mental health issues before she could be expected to be able to care for the children. He also stated that she needed to be in long-term continuous therapy in order to determine the source of the mood dysregulation she demonstrated during the evaluation. Green's opinion as to the respondent's rehabilitative status was that she had not properly addressed her own barriers to reunification with the children. Green further opined that, in order to address her obsessive compulsive personality disorder and mood dysregulation, the respondent would need serious psychotherapy over a period of at least one and one-half years, and he also noted the respondent's "lack of engagement . . . ." Green opined that the respondent had not addressed sufficiently her mental health problems, due in part to such lack of engagement in treatment and her failure to remain medication compliant.

In light of the record, we conclude that the evidence supports the trial court's finding by clear and convincing evidence that the respondent had failed to achieve a level of rehabilitation that would encourage the belief that, within a reasonable time, considering the children's ages and needs, she could assume a responsible position in the lives of her children and, therefore, the

court's finding was not clearly erroneous. We also conclude that the court's finding by clear and convincing evidence that termination of the respondent's parental rights was in the best interests of the children was supported by the evidence and was not clearly erroneous.

The judgments are affirmed.

In this opinion DUPONT, J., concurred.

ROBINSON, J., dissenting. I respectfully dissent because I conclude that the trial court improperly shifted the burden of proof on the issue of personal rehabilitation to the respondent mother. Accordingly, I would reverse the judgments of the trial court and remand the case for a new trial.

As a preliminary matter, I take a moment to emphasize the judicial lens through which I believe we must review the court's decision. "The termination of parental rights is defined as the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his parent . . . . It is a most serious and sensitive judicial action. . . . Although that ultimate interference by the state in the parent-child relationship may be required under certain circumstances, the natural rights of parents in their children undeniably warrants deference and, absent a powerful countervailing interest, protection." (Citations omitted; internal quotation marks omitted.) *In re Juvenile Appeal (Anonymous)*, 181 Conn. 638, 640, 436 A.2d 290 (1980). Because termination of parental rights is one of the most drastic actions that the state may take against its citizens, we must be scrupulous in our review of a decision terminating a parent's rights.

It is well established that "[i]n order to terminate a parent's parental rights under [General Statutes] § 17a-112, *the petitioner [the commissioner of children and*

*families*] *is required to prove, by clear and convincing evidence,* that: (1) the department has made reasonable efforts to reunify the family; General Statutes § 17a-112 (j) (1); (2) termination is in the best interest of the child; General Statutes § 17a-112 (j) (2); and (3) there exists any one of the seven grounds for termination delineated in § 17a-112 (j) (3)." (Emphasis added.) *In re Samantha C.,* 268 Conn. 614, 628, 847 A.2d 883 (2004). "[T]he statutory criteria must be *strictly* complied with before termination can be accomplished." (Emphasis added; internal quotation marks omitted.) *In re Amanda A.,* 58 Conn. App. 451, 455, 755 A.2d 243 (2000). The ground for termination alleged in the present case was the respondent's failure to achieve a sufficient degree of personal rehabilitation pursuant to § 17a-112 (j) (3) (B) (ii).

In terminating the respondent's parental rights, the court found that "[a]s of the date of trial, [the respondent] had not made significant progress *to persuade the court by clear and convincing evidence* that she had met the objectives identified by Dr. [Logan L.] Green [a court-appointed psychologist] as important for reunification." (Emphasis added.) The fulfillment by the respondent of the objectives identified by Green evidently was essential to determining whether the respondent had achieved a sufficient degree of rehabilitation, as was necessary for reunification with her children.[1] As this was essential to the court's determination, it was incumbent upon the petitioner to demonstrate that the respondent had failed to meet the objectives. However, by requiring the respondent to prove by clear and

---

[1] In fact, the court found Green's report to be a "compelling document." Aside from Green's report, the record indicates that, in determining whether the respondent had achieved a sufficient degree of personal rehabilitation, the court also relied on the petitioner's evidence that the respondent had not fully complied with the court-ordered specific steps, including certain substance abuse orders.

convincing evidence that she had met Green's objec-
tives, the court, at least in part, put the burden of proof
on the respondent to demonstrate that she had achieved
a sufficient degree of personal rehabilitation. This, of
course, is improper because the petitioner always bears
the burden of proof on the issue of personal rehabilita-
tion, and this burden never shifts. Accordingly, in reach-
ing its decision, the court acted contrary to § 17a-112
by shifting the burden of proof on the issue of personal
rehabilitation to the respondent.[2]

Due to the problematic nature of the court's language,
the respondent sought an articulation from the court.
The court offered two articulations in an attempt to
clarify the disputed language contained in its decision.[3]
In its first articulation, the court explained that its inten-
tion was not to require that the respondent prove by
clear and convincing evidence that she had met Green's
objectives, but, rather, that the respondent "had an obli-
gation to meet the requirements of her specific steps
in order to be reunited with her two sons" and that
"[*the petitioner*] had proved by clear and convincing
evidence that . . . [the respondent] had not addressed
successfully her [issues]." (Emphasis added.) In its fur-
ther articulation, the court stated that the decision,
taken as whole, "articulates that the court's conclusion
that [the petitioner] provided [the respondent] with the
opportunity and services necessary to address the

---

[2] As further evidence of this burden shift, the court states in its memoran-
dum of decision that it found that the respondent had not "established to
the court's satisfaction that she is prepared educationally or emotionally to
assume the primary care role of caring for her children."

[3] It is noteworthy that in both articulations, the court acknowledged that
the language that it employed suggested that the burden of proof was on
the respondent regarding the issue of personal rehabilitation. In its first
articulation, the court stated that it "agrees that the language . . . suggests
a shifting of the burden . . . ." In its second articulation, the court stated
that it "acknowledges that the specific language cited suggested the alleged
shift of [the] burden."

issues upon which the original commitment was based, and [that the respondent] failed to take full advantage of those services or rehabilitate to a degree that reunification was appropriate."

In my view, the articulations present new reasoning and a new basis to support the decision to terminate the respondent's parental rights, namely, that the *petitioner* carried her burden of proving that the respondent had failed to achieve a sufficient degree of personal rehabilitation. "An articulation is not an opportunity for a trial court to substitute a new decision nor to change the reasoning or basis of a prior decision. . . . If, on appeal, this court cannot reconcile an articulation with the original decision, a remand for a new trial is the appropriate remedy." (Citation omitted; internal quotation marks omitted.) *Lusa* v. *Grunberg*, 101 Conn. App. 739, 743, 923 A.2d 795 (2007).

I conclude, therefore, that the court improperly shifted the burden of proof on the issue of personal rehabilitation to the respondent and that the court's articulations changed the basis of the original decision. Accordingly, I would reverse the judgments of the trial court and remand the case for a new trial.