IN RE ANVAHNAY S.*
(AC 32450)

DiPentima, C. J., and Bear and Borden, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued March 8—officially released April 19, 2011

*Trudy Condio,* for the appellant (respondent father).

*Colleen B. Valentine,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* former attorney general, and *Benjamin Zivyon,* assistant attorney general, for the appellee (petitioner).

*Opinion*

DiPENTIMA, C. J. The respondent father, Anthony S., appeals from the judgment of the trial court terminating his parental rights with respect to his minor child, Anvahnay S.[1] On appeal, the respondent claims that the court's findings were clearly erroneous that (1) the department of children and families (department) made reasonable efforts to reunify him with Anvahnay and that he was unwilling or unable to benefit from such efforts, and (2) he had failed to achieve a sufficient degree of personal rehabilitation pursuant to General Statutes § 17a-112 (j) (3) (B). We affirm the judgment of the trial court.

On September 17, 2007, the department received a referral regarding Anvahnay from the family relations division of the Superior Court due to an incident of domestic violence. After an investigation, the department substantiated physical neglect of Anvahnay by the child's mother. On August 6, 2008, the petitioner, the commissioner of children and families (commissioner), invoked a ninety-six hour administrative hold; see General Statutes § 17a-101g; and removed Anvahnay from the care and custody of the mother. On August 8, 2008, the commissioner filed a motion for an order of temporary custody and a neglect petition with the Superior Court. The court granted the order of temporary custody that same day. On February 24, 2009, the court adjudicated Anvahnay neglected and committed her to

---

[1] The court also terminated the parental rights of Anvahnay's mother; however, the mother has not appealed from this judgment. We, therefore, refer in this opinion to the respondent father as the respondent.

the care and custody of the commissioner. Thereafter, on January 13, 2010, the commissioner filed a petition to terminate the rights of both parents.

Following a trial, the court granted the commissioner's petition, making the following findings of fact by clear and convincing evidence. Anvahnay was born on June 16, 2007. The respondent has had minimal involvement in her life. During the department's investigation of the mother following the September 17, 2007 referral, the respondent's whereabouts were unknown to the department. From the time the commissioner was granted temporary custody of Anvahnay on August 8, 2008, until April 28, 2009, the respondent was a fugitive on "escape status" from the department of correction.

Despite having appeared in court in May, 2008, to consent to the termination of his parental rights of a son through another relationship, the respondent never communicated with the department regarding Anvahnay during the period of his escape status. The respondent has been incarcerated for most of the time that the department has been involved with Anvahnay, and he has not been able to take advantage of services offered by the department of correction. Even after he was transferred to a halfway house in April, 2010, the respondent failed to notify the department to arrange for services. Consequently, the respondent has not complied with most of his court-ordered specific steps to facilitate reunification with Anvahnay. The court then concluded that the department had made reasonable efforts to reunify the respondent with Anvahnay and that the respondent was unable or unwilling to benefit from such efforts. The court thereafter determined that the respondent had failed to achieve a sufficient degree of personal rehabilitation to the point where he could assume a responsible position in Anvahnay's life within a reasonable time and that it was in Anvahnay's best

interest to terminate his parental rights. This appeal followed.

We first set forth our relevant standard of review and the legal principles that inform our analysis. "Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . .

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . .

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child."[2] (Internal quotation marks omitted.) *In re Rafael S.*, 125 Conn. App. 605, 610–11, 9 A.3d 417 (2010). With these principles in mind, we turn to the respondent's claims.

[2] The respondent does not challenge any of the court's findings made during the dispositional phase of the trial.

I

The respondent first claims that the court's findings that the department had made reasonable efforts to reunify him with Anvahnay and that he was unable or unwilling to benefit from such efforts were clearly erroneous. We disagree.

As a preliminary matter, we note that the department was required to show clear and convincing evidence of only one of the statutory conditions the respondent now challenges. Section 17a-112 (j) provides in relevant part: "The Superior Court . . . may grant a petition [to terminate parental rights] if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, *unless* the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . ." (Emphasis added.) Thus, "the department must prove [by clear and convincing evidence] *either* that it has made reasonable efforts to reunify *or*, *alternatively*, that the parent is unwilling or unable to benefit from reunification efforts. Section 17a-112 (j) clearly provides that the department is not required to prove both circumstances. Rather, either showing is sufficient to satisfy this statutory element." (Emphasis in original.) *In re Jorden R.*, 293 Conn. 539, 552–53, 979 A.2d 469 (2009). Accordingly, because we conclude that the court properly found, on the basis of clear and convincing evidence, that the department had made reasonable efforts to reunify the respondent and Anvahnay, we do not reach his claim that the court improperly concluded that he was unable or unwilling to benefit from reunification efforts.

The respondent argues that the court's finding that the department had made reasonable efforts to reunify

him with Anvahnay was not supported by clear and convincing evidence because the department communicated with him only once, failed to apprise him sufficiently of the specific steps required of him to facilitate reunification and provided him with only two visits with Anvahnay. In reply, the commissioner contends that although it is conceivable that more could have been done in this case, the department's efforts were reasonable in light of the circumstances created by the respondent. We agree with the commissioner.

"The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. . . . [R]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *In re Chevol G.*, 125 Conn. App. 618, 621, 9 A.3d 413 (2010). Lisa Miller, Anvahnay's case worker at the department, testified that until May, 2009, when the child's paternal grandparents informed her that the respondent had been reincarcerated, the respondent's whereabouts had been unknown to the department prior to and during his escape status from the department of correction. During this time, Miller maintained monthly contact with the paternal grandparents, who would receive periodic telephone calls from the respondent, and she asked the paternal grandparents to relay her contact information and important court dates to him. The paternal grandparents told Miller that they had provided her telephone number to the respondent, but Miller testified that he never called her while he was on escape status. We conclude that during the time the respondent's whereabouts were unknown, the department's efforts to reunify the respondent with Anvahnay were reasonable.

Miller testified that after the respondent's whereabouts became known to the department in May, 2009, she twice spoke with him. She first met him in the court

hallway after a hearing on Anvahnay's permanency plan in November, 2009. During this meeting, Miller provided the respondent with her contact information and discussed the specific steps that were required of him to facilitate reunification, which the court had read to him during the permanency plan hearing earlier. Because the respondent's incarceration prevented the department from providing services itself, Miller encouraged the respondent to seek out any services provided by the department of correction and then asked him to notify her immediately if he was transferred to a halfway house so that she could arrange community based services. Miller then spoke with the respondent by telephone in February, 2010, "[t]o facilitate treatment planning" and to hear about the services he was receiving. The department made two additional attempts to reach the respondent in April, 2010, but was unsuccessful. Although we recognize that the department did not contact the respondent directly until November, 2009, despite having learned of his reincarceration in May, 2009, we cannot conclude that the court's finding that the department's efforts were reasonable under the circumstances was clearly erroneous.

First, through its monthly contact with the paternal grandparents, the department became aware that the respondent was making weekly telephone calls to the paternal grandparents after his reincarceration and was speaking with Anvahnay during these calls. The paternal grandparents also had offered to bring Anvahnay to visit with the respondent, and the department was relying on them to provide this service. Because the paternal grandparents had served previously as a messenger between the department and the respondent while he was a fugitive, the court properly could have concluded that the department's reliance on the paternal grandparents to facilitate visits was a reasonable effort at reunification. See, e.g., *In re Jermaine S.*, 86

Conn. App. 819, 838, 863 A.2d 720, cert. denied, 273 Conn. 938, 875 A.2d 43 (2005). Moreover, immediately upon learning that the grandparents were not bringing Anvahnay to visit with the respondent, a fact it learned from the grandparents and not the respondent, the department began providing the visits itself. Second, the respondent has not identified how this period without direct contact was unreasonable where the "inevitable restraint"; see *In re Juvenile Appeal (Docket No. 10155)*, 187 Conn. 431, 443, 446 A.2d 808 (1982); imposed by his incarceration restricted the department's ability to do little more than provide visits with Anvahnay.

When the respondent was transferred to a halfway house and the department was able to provide him with services, he failed to notify the department of his availability for such services, as had been requested of him by Miller during the November, 2009 meeting. This court has stated previously that "[w]e cannot fault the department for not being able to deliver services to the respondent when he failed to inform the department of his whereabouts . . . ." *In re Natalia G.*, 54 Conn. App. 800, 807, 737 A.2d 506 (1999). In sum, there is clear and convincing evidence in the record that the department maintained both direct and indirect contact with the incarcerated respondent, provided him with contact information, discussed the specific steps he was required to complete and arranged to have Anvahnay visit him, initially through the paternal grandparents and thereafter through its direct involvement. The respondent's incarceration prevented the department from providing him with services, but he was encouraged to use the services available to him through the department of correction and then told to notify the department when he was transferred to a halfway house so it could arrange community based services. At no

point did the respondent attempt to alert the department to his situation, including when he went without visits from Anvahnay, and when he was transferred to a halfway house and was able to participate in community based services. Under these circumstances, we conclude that the court's finding that the department had made reasonable efforts to reunify the respondent with Anvahnay was not clearly erroneous.

## II

The respondent next claims that the court erroneously found that he had failed to achieve a sufficient degree of personal rehabilitation, pursuant to § 17a-112 (j) (3) (B), as would encourage the belief that within a reasonable time he could assume a responsible position in Anvahnay's life. We disagree.

"[P]ersonal rehabilitation . . . refers to the restoration of a parent to his or her former constructive and useful role as a parent . . . [and] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . The statute does not require [a parent] to prove precisely when [he] will be able to assume a responsible position in her child's life. Nor does it require [him] to prove that [he] will be able to assume full responsibility for [his] child, unaided by available support systems. It requires the court to find, by clear and convincing evidence, that the level of rehabilitation [he] has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date [he] can assume a responsible position in [his] child's life." (Internal quotation marks omitted.) *In re Melody L.*, 290 Conn. 131, 149, 962 A.2d 81 (2009).

Calling our attention to the lack of a "meaningful opportunity to engage in services to correct his personal

and parenting deficiencies," both during his incarceration and after his transfer to a halfway house, the respondent argues that it was clearly erroneous for the court to find that he had failed to achieve a sufficient degree of personal rehabilitation when he had not first been provided with services to address his issues, which, he asserts, were not "so serious" to begin with. In making this claim, the respondent implicitly concedes that he underwent no "rehabilitation" after Anvahnay had been adjudicated neglected; he claims, however, that given the innocuous nature of his problems, the record lacks clear and convincing evidence that he could not assume a responsible position in Anvahnay's life within a reasonable period of time. We are not persuaded.

In its memorandum of decision, the court found that "[the respondent] has not been able to take full advantage of services, as he has been incarcerated for most of the current [department] involvement and has just recently been released from jail." "Specific steps ordered by the court on February 24, 2009, to facilitate the return of Anvahnay to [the respondent] have not been complied with." Thus, the respondent had failed to make "the changes necessary in [his lifestyle] that would indicate that [he] would be [a] safe, responsible and nurturing [parent] for [his] child." The court further found that "[the respondent] will not be able to assume a responsible position in the life of his child within a reasonable time period. He has had minimal involvement in the life of his daughter. He was not available to her during the time he was on escape status from the department of correction, and he has been recently incarcerated. He has not contacted [the department] with regard to [Anvahnay] since she came into [the department's] care." "[The respondent] has maintained little contact with the child and the [department]. In order to improve his parenting bond with his child, he

is in need of adequate parenting classes and significant visitation with his child. However, since he has been incarcerated for much of the time and was only recently released from incarceration, time will not permit the necessary compliance." As a result, the court found that the respondent had failed to achieve a degree of personal rehabilitation that would encourage a belief that he could assume a responsible position in Anvahnay's life within a reasonable amount of time.

We conclude that the court's finding was supported by clear and convincing evidence. The record shows that at the time of trial the respondent either had been incarcerated or his whereabouts were unknown for all but three months of Anvahnay's life. During the time that Anvahnay has been in the custody of the commissioner, the respondent has not once initiated contact with the department. Although we recognize that his ability to obtain services while in prison was limited, during his incarceration he failed to notify the department of the lack of visits with Anvahnay, and upon being transferred to a halfway house in April, 2010, he did not seek reunification with Anvahnay, nor did he participate in available community based services. "An inquiry regarding personal rehabilitation requires us to obtain a historical perspective of the respondent's child-caring and parenting abilities. . . . What constitutes a reasonable time is a factual determination that must be made on a case-by-case basis." (Citation omitted.) *In re Stanley D.*, 61 Conn. App. 224, 231, 763 A.2d 83 (2000). The record shows that the respondent has lacked the ability or willingness to be a parent to Anvahnay. Moreover, there was no evidence at trial to suggest that these circumstances would change in the foreseeable future. Accordingly, we conclude that the court's finding that the respondent had failed to achieve a sufficient degree of personal rehabilitation was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.