******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE SAVANNAH Y.*
(AC 39594)

Alvord, Bentivegna and Pellegrino, Js.

*Argued February 2—officially released March 29, 2017***

(Appeal from Superior Court, judicial district of
Litchfield, Juvenile Matters, Ginocchio, J.)

*David B. Rozwaski*, assigned counsel, for the appellant (respondent mother).

*Cynthia E. Mahon*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Geraldine Mann*, for the minor child.

*Opinion*

BENTIVEGNA, J. The respondent mother, Ashley R., appeals from the judgment of the trial court, rendered in favor of the petitioner, the Commissioner of Children and Families, terminating her parental rights with respect to her minor child, Savannah Y.[1] On appeal, the respondent claims that the court improperly determined that (1) the Department of Children and Families (department) made reasonable reunification efforts, (2) she had failed to achieve a sufficient degree of personal rehabilitation to encourage a belief that she could assume a responsible position in Savannah's life within a reasonable period of time, (3) there was no ongoing parent-child relationship, and (4) termination of her parental rights was in the best interest of the child. We affirm the judgment of the court.

We set forth the following relevant facts and procedural history. In April, 2014, the department received a report of domestic violence in Savannah's home and opened the present case. That report involved the respondent and Savannah's father, D.Y. On June 22, 2014, D.Y. was arrested for allegedly strangling and assaulting the respondent. The respondent's children were present during this event. Following the assault, a full protective order was imposed between D.Y. and the respondent. On two different occasions, D.Y. violated the protective order when he was found present in the respondent's home. In addition to the reported domestic violence, the department was also concerned with issues relating to "alcoholism, hygiene and unkempt conditions in the home."

Following the initial referral, the department worked with the respondent and D.Y. for several months. These efforts were unsuccessful. On September 24, 2014, the order of temporary custody was filed and granted for Savannah. On March 9, 2015, the court adjudicated Savannah neglected and committed her to the care, custody and control of the petitioner. On August 5, 2015, a permanency plan of termination of parental rights and adoption was approved. Thereafter, on January 15, 2016, the petitioner filed a petition to terminate the rights of both parents.

Following a trial, the court granted the petition, making the following findings of fact by clear and convincing evidence. Savannah was born in July, 2013. The respondent has given birth to several children and currently has two children, Savannah and Carter O. She also gave birth to another child named Mercedes. In 2007, Mercedes died tragically when she was crushed by boxes that fell onto her from a closet above. This traumatic event significantly impacted the respondent's mental health.

The respondent has been in several romantic relationships throughout her life, including relationships with

S.O. and D.Y. She met S.O. while working at a restaurant in 2004. There was a history of domestic violence throughout the respondent's relationship with S.O. Following the death of Mercedes, S.O. became physically abusive and the respondent expressed that their relationship "just was not working out and it was too stressful for him." The respondent and D.Y. later met through mutual friends, and their relationship was also abusive. The respondent and D.Y. separated because D.Y. became violent toward her. The respondent is currently not in a relationship with S.O., D.Y., or anyone else.

The respondent has a history of mental health and substance abuse issues that have existed and persisted since the birth of Savannah. Although the respondent has received some treatment to address these issues, she has not consistently complied with her various treatment plans. At one point, the respondent had stopped treatment services entirely, but she reengaged in October, 2014. Notably, the respondent did not participate in mental health treatment of any sort from February through September, 2015.

The respondent also has a criminal history. Recently, the respondent was incarcerated from June 23 through September 17, 2015. The respondent was released to a transitional housing program in September, 2015 as a requirement of the pretrial phase of her criminal case.

The court concluded "by clear and convincing evidence that [the department] has made reasonable efforts to reunify [the respondent] with Savannah and/or [the respondent] is unable and/or unwilling to benefit from reunification efforts." The court further concluded that "[a]fter due consideration of the child's sense of time, her need for a secure and permanent environment and the totality of the circumstances; and having concluded that grounds exist for termination of parental rights; and having considered all the statutory criteria and having found by clear and convincing evidence that grounds exist for termination of parental rights; and having concluded that termination of the parental rights at issue will be in the child's best interests," the court terminated the parental rights of the respondent mother and the child's father. The respondent's appeal followed.

I

ADJUDICATION PHASE

The respondent raises three claims arising from the adjudication phase of the termination proceeding. She claims that the court erred with respect to: (1) its reasonable efforts determination; (2) the respondent's failure to rehabilitate; and (3) the lack of an ongoing parent-child relationship. After setting forth our standard of review, we will consider each of the respondent's claims.

"Our standard of review on appeal from a termination

of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . .

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Anvahnay S.*, 128 Conn. App. 186, 190, 16 A.3d 1244 (2011).

"In order to terminate a parent's parental rights under § 17a-112, the petitioner is required to prove, by clear and convincing evidence, that: (1) the department has made reasonable efforts to reunify the family; General Statutes § 17a-112 (j) (1); (2) termination is in the best interest of the child; General Statutes § 17a-112 (j) (2); and (3) there exists any one of the seven grounds for termination delineated in § 17a-112 (j) (3)." (Footnote omitted.) *In re Samantha C.*, 268 Conn. 614, 628, 847 A.2d 883 (2004).

"[A] hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights . . . exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase." (Internal quotation marks omitted.) *In re Alison M.*, 127 Conn. App. 197, 203–204, 15 A.3d 194 (2011). With these principles in mind, we turn to the respondent's claims as to the adjudication phase.

A

The respondent first claims that the court improperly determined that the department made reasonable efforts to reunify her with Savannah, that prior reunification efforts had failed, and that the respondent was unwilling and unable to benefit from the reunification efforts. We disagree.

"In order to terminate parental rights under § 17a-112 (j), the [petitioner] is required to prove, by clear and convincing evidence, that [the department] has made reasonable efforts . . . to reunify the child with the parent, unless the court finds . . . that the parent is unable or unwilling to benefit from the reunification . . . . [Section 17a-112] imposes on the department the duty, inter alia, to make reasonable efforts to reunite

the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible." (Internal quotation marks omitted.) *In re Jason R.*, 129 Conn. App. 746, 767–68, 23 A.3d 18 (2011), aff'd, 306 Conn. 438, 51 A.3d 334 (2012).

"Thus, the [petitioner] must prove [by clear and convincing evidence] *either* that [the department] has made reasonable efforts to reunify *or*, *alternatively*, that the parent is unwilling or unable to benefit from the reunification efforts. Section 17a-112 (j) clearly provides that the [petitioner] is not required to prove both circumstances. Rather, either showing is sufficient to satisfy this statutory element." (Emphasis in original; internal quotation marks omitted.) *In re Anvahnay S.*, supra, 128 Conn. App. 191.

"The trial court's determination of this issue will not be overturned on appeal unless, in light of all of the evidence in the record, it is clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *In re Jason R.*, supra, 129 Conn. App. 768. "[E]very reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Melody L.*, 290 Conn. 131, 145, 962 A.2d 81 (2009), overruled in part on other grounds by *State* v. *Elson*, 311 Conn. 726, 746–47, 91 A.3d 862 (2014).

In concluding that the department had made reasonable efforts to reunify the respondent with Savannah, the court found the following facts. Since the initial referral of the present case, the respondent "was offered referrals and services by way of specific steps," including referrals for "substance abuse, mental health treatment, domestic violence, parenting, and housing." These services provided the respondent the opportunity to prove her individual capabilities in maintaining herself, and her capabilities to care for Savannah. The court found that the respondent did not comply with these referrals for a substantial period of time.

The respondent was also attending supervised visits with Savannah, from October, 2014 through February, 2015. The respondent, however, was later discharged for noncompliance. In February, 2015, the department referred the respondent to Family and Children's Aid Reunification and Therapeutic Family Time program. The respondent initially attended these visits, but stopped attending a few weeks later. The respondent was subsequently discharged in March, 2015 for non-

compliance and the department did not recommend further reunification services. The respondent was also not in communication with the department and her whereabouts were unknown for several months until the department learned of her imprisonment.

Moreover, the respondent was incarcerated from June through September, 2015, and, during this time, had not seen the child for more than five months. Although the respondent requested visitation, this request was denied because the child had no memory of her mother and transporting the child to the prison was deemed not to be in the best interest of the child. As noted previously, from the time the respondent was discharged from her treatment programs for noncompliance through her later release from incarceration, the respondent was without any treatment.

In sum, the court's finding that the department offered services to the respondent over the course of Savannah's young life, which provided the respondent with the opportunity to be reunited with the child, is adequately supported by the record. The department offered a range of services to address the many concerns relating to the respondent's mental health, substance abuse, and overall ability to care for the child. The respondent's noncompliance with the offered services and later incarceration reasonably led the court to conclude that both statutory elements of § 17a-112 (j) were satisfied, i.e., that the department had made reasonable efforts and that the respondent was unwilling and unable to benefit from such services. Accordingly, the court's findings relating to this claim are supported by the record and, thus, not clearly erroneous.

B

The respondent also contends that the court improperly determined that she had failed to achieve a sufficient degree of personal rehabilitation as would encourage the belief that within a reasonable time she could assume a responsible position in Savannah's life within the meaning of § 17a-112 (j) (3) (B) (i). We disagree.

Section 17a-112 (j) (3) (B) requires the court to find by clear and convincing evidence "that the child (i) has been found by the Superior Court . . . to have been neglected or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ." (Internal quotation marks omitted.) *In re Elvin G.*, 310 Conn. 485, 503, 78 A.3d 797 (2013).

Our Supreme Court has clarified that "[a] conclusion of failure to rehabilitate is drawn from both the trial court's factual findings and from its weighing of the facts in assessing whether those findings satisfy the failure to rehabilitate ground set forth in § 17a-112 (j) (3) (B). Accordingly . . . the appropriate standard of review is one of evidentiary sufficiency, that is, whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court." (Emphasis omitted; internal quotation marks omitted.). *In re Shane M.*, 318 Conn. 569, 587–88, 122 A.3d 1247 (2015). We will not disturb the court's subordinate factual findings unless they are clearly erroneous. See id., 587; *In re Leilah W.*, 166 Conn. App. 48, 68, 141 A.3d 1000 (2016).

"Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . [The statute] requires the court to find, by clear and convincing evidence, that the level of rehabilitation [that the parent has] achieved, if any, falls short of that which would reasonably encourage a belief that at some future date she can assume a responsible position in her child's life. . . . [I]n assessing rehabilitation, the critical issue is not whether the parent has improved her ability to manage her own life, but rather whether she has gained the ability to care for the particular needs of the child at issue. . . . As part of the analysis, the trial court must obtain a historical perspective of the respondent's child caring and parenting abilities, which includes prior adjudications of neglect, substance abuse and criminal activity." (Internal quotation marks omitted.) *In re Christopher L.*, 135 Conn. App. 232, 245, 41 A.3d 664 (2012).

The respondent claims that the court's finding that she failed to achieve personal rehabilitation was improper because the respondent is actively engaged in rehabilitative treatment, and has begun to address her substance abuse and mental health issues. We disagree.

There is ample evidence in the record to support the court's conclusion that the respondent failed to achieve a sufficient degree of personal rehabilitation. In reaching its conclusion, the court reasoned that the respondent's "road to recovery will be a long one. Her initial progress has been significant, but it is progress that has been made in a confined and controlled setting. Based on the [evidence], it would be fair to conclude

that the respondent . . . will need considerable time to deal with her substance abuse and trauma issues. It could be another eighteen months to two years before she has gainful employment, adequate housing, and the ability to assume a responsible role in her child's life. Based on the age and needs of Savannah, this [progress] would be too little too late."

It is important to first note that the court recognized the progress that the respondent has made. For example, since her release from prison in September, 2015, the court noted that the respondent "has been a model probationer as well as a model patient at Crossroads, Inc. . . . It is also uncontroverted that since her release from prison she has substantially complied with the specific steps." The court continued and noted that the respondent "should be commended for all of her achievements and her participation in the various programs recommended for her." Notwithstanding, the court found that the respondent's progress, in conjunction with the needs and age of Savannah, was "too little too late." Even though the court recognized that the respondent has made some progress, her progress was not sufficient for the court to conclude that she achieved a sufficient degree of personal rehabilitation.

The court relied upon the testimony of Tracy Tatsapaugh, a social worker at the department, and Stephanie Leite, a doctor of psychology and an expert in the field of risk assessment in child protection cases, in reaching its conclusion. Tatsapaugh described the circumstances under which the department opened the case and the various mental health and substance abuse issues the respondent faces. The department opened this case in 2014 due to "issues in [the] respondent's home regarding domestic violence, alcoholism, hygiene and unkempt conditions in the home." Further, the respondent was not engaged in counseling or substance abuse treatment between December, 2014 and September, 2015. During this time, the respondent was abusing drugs and tested positive for heroin while being treated at McCall foundation.

As noted previously, the record reveals that between December, 2014, and September, 2015, the respondent made little or no progress in the various treatment plans. The respondent's whereabouts were unknown from March to June, 2015. From June through September, 2015, the respondent was incarcerated. During this period, the respondent was not engaged in any treatment. Only after her release from prison in September, 2015 did she truly engage in treatment; however, this treatment occurred in a controlled environment. Also, the treatment following her incarceration primarily was related to her then pending criminal case. The respondent only began to adequately address her mental health, substance abuse issues, and related child protection issues beginning in February, 2016, after the peti-

tion to terminate her parental rights was filed.

Although the respondent has made progress in her rehabilitation, in particular the time following her release from prison in a controlled setting, there was no immediate discharge plan and the department "was opposed to a plan which would call for the mother and child to live in transitional housing while the mother was inpatient." According to Tatsapaugh, too much time had passed and there was no defined answer for success or the ability for the mother to obtain employment and to parent Savannah in her own home. According to Tatsapaugh, Savannah required permanency and stability for her development and had successfully been in foster care for two years.

Leite's testimony was based upon forensic evaluations of the respondent that she conducted, and she concluded that "reunification of Savannah with [the respondent] would not be in the child's best interest." Although Leite and the respondent's counselors recognized that she had been a "model patient," she however was unable to "provide a definite discharge date or plan." Leite's evaluation described the respondent as someone who suffers from substance abuse issues that are "further complicated by her trauma history."[2] Leite concluded that "while [Savannah's] parents were struggling to do what was asked of them by [the department], [she] was living in a loving home, where her needs were met. She has reportedly developed an attachment to her foster parents and her new baby sister. She is loved by her foster family, including an extended family."

It is clear from our review of the record that the court considered many factors in making its findings, including the progress or lack thereof that the respondent had made either in a controlled setting or in the community, the significant issues that the respondent has yet to address, and the severity of the respondent's mental health and substance abuse issues. The court noted that the respondent is only in the beginning stages of treatment and that her road to recovery is "a long one." The respondent has simply not reached a sufficient level of progress. It is also clear that Savannah's foster family provides the necessary care that the child needs and satisfies her need of permanency.

Accordingly, we conclude that the court's finding, by clear and convincing evidence, that the respondent failed to achieve a degree of rehabilitation as would encourage the belief that within a reasonable period of time she could assume a responsible position in the child's life was not clearly erroneous.

C

Finally, the respondent argues that the court improperly found that no ongoing parent-child relationship existed pursuant to § 17a-112 (j) (3) (D). For the reasons set forth as follows, we decline to review this claim.

In part I B of this opinion, we concluded that the court properly found that the respondent had failed to achieve personal rehabilitation pursuant to § 17a-112 (j) (3) (B). "We need uphold only one statutory ground found by the court to affirm its decision to terminate parental rights. . . . To prevail on her claim that the court improperly terminated her parental rights, the respondent must successfully challenge all of the bases of the judgment terminating her parental rights. If [any] of the grounds on which the trial court relied are upheld on appeal, the termination of parental rights must stand." (Citation omitted; internal quotation marks omitted.) *In re Mariah S.*, 61 Conn. App. 248, 267–68, 763 A.2d 71 (2000), cert. denied, 255 Conn. 934, 767 A.2d 104 (2001). The court here properly concluded that a statutory ground for termination properly exists, i.e., failure to achieve personal rehabilitation, thus, we need not reach the respondent's claim that the court's finding of no ongoing parent-child relationship was improper. See id., 268.

## II

### DISPOSITIONAL PHASE

Finally, the respondent claims that the court improperly concluded that termination of her parental rights was in the best interest of Savannah. We disagree.

"In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the [parent's] parental rights is not in the best interests of the child. In arriving at that decision, the court is mandated to consider and make written findings regarding seven factors delineated in . . . § [17a-112 (k)] . . . ." (Internal quotation marks omitted.) *In re Alison M.*, supra, 127 Conn. App. 204. As we noted previously in this opinion, "[t]he determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Internal quotation marks omitted.) *In re Anvahnay S.*, supra, 128 Conn. App. 190. On our review of the record, the court's factual findings are supported by the evidence.

At the time of this proceeding, Savannah was almost three years old and had spent nearly the majority of her young life in foster care. During that time, the child had become emotionally attached to her foster parents and continues to seek their attention and comfort. The child does not view the respondent the same way. Although the respondent has taken steps to address her mental health and substance abuse issues, the court found that she is not in a position to assume a parental role in Savannah's life. That conclusion is largely based upon the respondent's chronic mental health and sub-

stance abuse issues. The court properly considered and made written findings regarding the factors delineated in § 17a-112 (k). The court considered Savannah's need for permanency, the bond she has attained with her foster parents, and the significant rehabilitation that remains for the respondent. Based upon the facts contained in the record, we conclude that it was not clearly erroneous for the court to have found that it was in Savannah's best interest to terminate the parental rights of the respondent.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** March 29, 2017, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The court also terminated the parental rights of Savannah's father, D.Y., however, the father has not appealed from this judgment. We, therefore, refer in this opinion to the respondent mother as the respondent.

[2] Leite's May 24, 2016 evaluation of the respondent provided in relevant part: "[The respondent] is an individual who experienced a life-changing trauma. Unfortunately, she did not receive the appropriate treatment for the trauma regarding the death of [Mercedes]. Instead, she turned to substance-abuse and the control of an abusive man to help her cope with her trauma. Neither were good choices. As a result, she is homeless and is likely continuing to abuse substances to cope with her pain. In addition, the trauma of being in an abusive relationship and that of losing her children has added to the trauma load."